# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

July 10, 2008

The Honorable Gregory M. Sleet  
United States District Court  
844 King Street  
Wilmington, Delaware 19801

VIA ELECTRONIC FILING

Re:   *Cisco Systems, Inc., and Cisco Technology, Inc. v. Telcordia Technologies, Inc.*,  
C.A. No. 07-113-GMS

Dear Chief Judge Sleet:

This patent case concerns two patents — U.S. Patent Nos. 5,142,622 ("the '622 Patent") and 6,377,988 ("the '988 Patent") — that Cisco purchased from IBM and British Telecom, respectively. Shortly after acquiring these patents, Cisco sued Telcordia for infringement, asserting method claim 7 of the '622 Patent and method claim 1 of the '988 Patent. Unfortunately for Cisco, it purchased the wrong patents and asserted the wrong claims.

As discussed below, Cisco's decision to assert only method claims creates fundamental, legal infringement issues that are common to both patents and ripe for a summary judgment determination.[1] In addition, there are other simple reasons — based upon claim construction — as to why the Telcordia Accused Products do not infringe. On these grounds, Telcordia respectfully requests permission to file and brief a motion for summary judgment of non-infringement.

**Telcordia Cannot Be Liable for <u>Direct</u> Infringement of the Asserted Method Claims**

This case is limited to method claims. Specifically, it concerns two method claims that are generally directed to the operation of network communication devices that consist of hardware and software. As such, to show a direct infringement of either asserted method claim, Cisco must prove that a single party operates communication devices in such a way that they perform each and every step of the claimed method. *See BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) (citing *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)).

---

[1] Cisco's Complaint alleges infringement by the following Telcordia software products: Telcordia's Element Communicator CE ("Elcom"), Granite Inventory ("Granite"), and NMA System CE ("NMA") (collectively, the "Accused Products"). Although Cisco did not name Telcordia's OCS product in its Complaint, Cisco identified OCS as an allegedly infringing product in its contentions. Accordingly, Telcordia considers OCS to be an "Accused Product" for the purpose of this motion.

{00229071;v1}

The Honorable Gregory M. Sleet
July 10, 2008
Page 2

Here, there is no dispute that the Accused Products are software products. Nor is there any dispute that Telcordia "makes" and "sells" these products in the form of software, but does not "make" or "sell" the associated hardware that is necessary for its software to execute. This is critical, because any making and selling of software without hardware falls well short of the claimed method of operation that must be performed by a single party. That is, Telcordia's acts of "making" and "selling" its software cannot and do not amount to a direct infringement. At least this much, Cisco cannot dispute. Accordingly, Telcordia seeks to move for summary judgment that it does not directly infringe either asserted method claim by "making" or "selling" the Accused Products.

**Telcordia Cannot Be Liable for <u>Indirect</u> Infringement of the Asserted Method Claims**

Because Telcordia cannot directly infringe either claimed method by "making" or "selling" the Accused Products, Cisco can only allege indirect infringement by Telcordia, *i.e.*, contributory or induced. Even then, however, to establish indirect infringement Cisco must show evidence of a specific instance of direct infringement by a Telcordia customer. *See ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). Specifically, Cisco must show evidence of a specific instance where a customer operated or operates the Telcordia Accused Products so as to perform each and every step of the claimed methods.

Here, the record shows no evidence of a specific instance of direct infringement by a Telcordia customer. Indeed, Cisco cannot dispute that it has not subpoenaed a single Telcordia customer. Nor can Cisco dispute that it failed to take or provide any testimony from a Telcordia customer who actually uses one of the Accused Products. In short, Cisco's entire case rests on hypothetical instances of direct infringement by a Telcordia customer. This, however, is insufficient as a matter of law. *Id.*

Moreover, even if there was evidence from a single customer (which there is not), Cisco still could not prove the necessary instance of direct infringement. Not only did Cisco choose to assert method claims, but it chose method claims that were drafted to require independent conduct from multiple actors. Cisco's own infringement contentions prove this point. Indeed, Cisco's contentions for claim 7 of the '622 Patent allege that the limitation of "executing an application program on each of said first and second processing systems" is met by Cisco's own network devices operating Cisco's own software. As such, the claim requires a second party performing a different act. Claim 1 of the '988 Patent suffers the same fate. That claim requires supporting network elements "performing a predetermined function in response to a group-specific instruction." The patentee's decision to have different parties perform different acts within one method claim is fatal to its case. *See BMC Resources*, 498 F.3d at 1381.

Telcordia also seeks to move for summary judgment of non-infringement based on the undisputed fact that the Accused Products cannot be operated so as to perform each and every step of the claimed methods. For at least the following reasons, the Accused Products do not meet certain claim limitations construed by the Court and/or agreed to by the parties.

The Honorable Gregory M. Sleet
July 10, 2008
Page 3


**Telcordia Does Not Infringe Claim 7 of the '622 Patent**

       Telcordia's request to move for summary judgment of non-infringement of claim 7 of the '622 Patent is predicated, in part, on the Court's Claim Construction Order. In that Order, the Court determined that the term "socket" means "an application program interface (API) that was developed for the Berkeley version of AT&T's UNIX operating system for interconnecting applications running on data processing systems in a network. It is an object that identifies a communication end point in a network, can be connected to other sockets, and hides the protocol of the network architecture beneath a lower layer." (D.I. 46) (emphasis added). As explained below, under this construction there can be no genuine issue of disputed material fact in that the Accused Products do not infringe claim 7.

       First, with regard to NMA and OCS, the undisputed record reveals that these products operate on a VOS operating system ("OS"), not a UNIX OS. VOS and UNIX are different OSs. Because NMA and OCS operate on a non-UNIX OS, it cannot genuinely be disputed that NMA and OCS do not operate with an "(API) that was developed for the Berkeley version of AT&T's UNIX operating system," as required by the Claim Construction Order. As such, at least NMA and OCS do not infringe claim 7.

       Second, with regard to the Elcom product, there is no dispute that Elcom operates on the HP-UX OS. Consequently, it cannot be disputed that Elcom operates with an API that was developed for the HP-UX OS. On its face, the HP-UX OS is not the "Berkeley version of AT&T's UNIX operating system," as required by the Claim Construction Order. For at least this reason, Elcom also does not infringe claim 7.

**Telcordia Does Not Infringe Claim 1 of the '988 Patent**

       Telcordia also requests permission to seek summary judgment of non-infringement for claim 1 of the '988 Patent. Summary judgment is proper here because the undisputed facts show that the Accused Products do not use a "generic instruction." As agreed to by the parties, the term "generic instruction" means "an instruction applicable to the groups of elements." (D. I. 44-2). Based on this construction, there is no dispute that a "generic instruction" must be applicable to more than one network element.

       To the extent Telcordia's customers use the Accused Products to generate an instruction, the undisputed record shows that each instruction is applicable to one—and only one—network element. Stated otherwise, the Accused Products require each instruction to be generated separately for each individual network element. Moreover, the record shows that the Accused Products require each and every instruction generated to specify the individual network element where the command will be sent and the channel connected to that network element that will carry the instruction. It cannot be genuinely disputed that such an instruction is <u>not</u> applicable to more than one element. Instead, each instruction is element-specific, generated separately for

The Honorable Gregory M. Sleet
July 10, 2008
Page 4

each specific element in the network. Based on these grounds, summary judgment of no infringement as to claim 1 of the '988 Patent is appropriate.

                 Respectfully,

                 */s/ Tiffany Geyer Lydon*

                 Tiffany Geyer Lydon


c:  Jack B. Blumenfeld, Esquire (by hand, and via electronic mail)
   Matthew D. Powers, Esquire (via electronic mail)
   Vincent P. Kovalick, Esquire (via electronic mail)