# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

July 24, 2008

The Honorable Gregory M. Sleet  
United States District Court  
844 King Street  
Wilmington, Delaware 19801

VIA ELECTRONIC FILING

Re:   *Cisco Systems, Inc., and Cisco Technology, Inc. v. Telcordia Technologies, Inc.,*  
C.A. No. 07-113-GMS

Dear Chief Judge Sleet:

Cisco's opening summary judgment letter is fueled by its ill-fated position of having asserted infringement against products that predate the very patents that it asserts.[1] Consequently, Cisco now seeks summary judgment that the accused products are not prior art. Cisco's sole argument is that no legally adequate evidence exists supporting a prior use or sale. Specifically, Cisco contends that there is no evidence of corroboration. Cisco is mistaken and factually wrong.[2] Accordingly, Cisco's briefing request should be denied.

Cisco's arguments fail because they are hinged upon an improper assumption that Telcordia solely relies on the oral testimony of one deponent. This is simply untrue. For purposes of its summary judgment motion, Cisco has failed to identify the actual documentary evidence produced by Telcordia that establishes evidence of patent barring events under Section 102. The witness testimony, though unnecessary, is consistent with and corroborates those documents. Thus, there is sufficient evidence supporting Telcordia's position that the accused products are prior art to the patents-in-suit in view of Cisco's infringement contentions.

**Telcordia Provided Evidence that the Accused Products are Prior Art**

Contrary to what Cisco contends, the record shows both documentary evidence and oral testimony that corroborate a prior invention, use, sale, publication, and/or prior knowledge under 35 U.S.C. § 102. As this Court knows, "[c]orroborating evidence may take many forms." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998). For example, contemporaneous documents or circumstantial evidence may corroborate. *Id.* In this case, the

---

[1] Telcordia contends that the accused products do not infringe. Nevertheless, Telcordia also maintains that the asserted claims are invalid under Cisco's strained infringement contentions, because those contentions point to accused functionality that was the subject of a prior invention, use, sale, publication, and/or prior knowledge under Section 102.

[2] In order to avoid burdening the Court with voluminous copies of the documents cited herein (all of which have previously been produced to Cisco), we have cited to examples – identifying them by Bates number and by the date on which they were produced to Cisco – but we have not provided copies of the documents. Should the Court conclude that it would be helpful to see copies of the cited documents, however, Telcordia of course will provide them promptly upon request.

{00232088;v1}

The Honorable Gregory M. Sleet
July 24, 2008
Page 2

documentary evidence alone establishes that the allegedly infringing features of the accused products were the subject of patent barring events. The oral testimony of Telcordia witness Don McGowan is consistent with these documents.

For instance, Telcordia has produced technical and contractual documents dating back to 1985. As such, any documents pre-dating the patents-in-suit that disclose the very features Cisco now points to as infringing are evidence of a patent barring event. As to the '988 Patent, for example, Cisco appears to suggest that a use of "broadcast warning messages" is an infringing act. This accused feature, however, already existed at Telcordia well before the earliest '988 patent priority date. Indeed, Telcordia's technical documents from July 1993 for NMA Release 3.4 describe the same accused "broadcast warning messages."[3] In fact, the portions of a 2006 document on which Cisco appears to rely for infringement are simply a shorter version of the same description found in the earlier 1993 document. Accordingly, under Cisco's own infringement contentions, there is a factual dispute as to Telcordia's prior invention, publication, use, sale, and/or prior knowledge as prior art.

Similarly, Cisco appears to suggest that a use of batch programming or an NMA scheduler feature could constitute an infringing act. Here again, each of these accused features already existed at Telcordia before the earliest priority date for the '988 patent. Telcordia's technical documents from February 1992 for NMA Release 3.2 describe the same allegedly infringing features.[4] Therefore, these documents also illustrate a factual dispute.

Furthermore, Telcordia has produced a contract with Grupo Tea confirming that the accused features were supported by NMA and the subject of Section 102 events.[5] By way of this June 1994 contract, Telcordia shipped NMA Release 4.0 to Grupo Tea for the purpose of having portions of the NMA software translated from English to Spanish. The terms of that contract designate a list of technical documents, user forms, and screens that were to be translated by Grupo Tea. Notably, that list recites the exact same 1992 and 1993 documents described above. The translation list further denotes the user forms and screens corresponding to the accused NMA scheduler feature, as well as the commands used to send a message to a network element. Thus, there is no dispute. The Grupo Tea contract, alone or in combination with the independent technical documents listed therein, establishes evidence of prior art in view of Cisco's infringement contentions for the '988 patent.

Mr. McGowan's testimony supports and corroborates these documents. As Cisco recognizes, Mr. McGowan testified that "there has been 'virtually no change' between NMA versions 3.2 and 18.1 with respect to the accused features." Cisco Opening Letter, at 2 (citing McGowan Tr., at 60:13-62:15). Consistent with that statement, the technical documents show that the accused features were in fact supported by NMA as early as Releases 3.3 and 3.4.

---

[3] "Using the NMA System to Transmit Broadcast Warning Messages," BR 190-602-510, Issue 1 (July 1993), NMA Release 3.4, produced October 12, 2007 at TCOR 0055584-5626.

[4] "Network Monitoring and Analysis System, User Programming Guide," BR 190-602-306, Issue 1 (Feb. 1992), NMA Release 3.3, produced October 12, 2007 at TCOR 0055745-813.

[5] Subcontractor Agreement Between Grupo Tea and Bellcore (June 4, 1994), produced October 12, 2007 at TCOR 0228640-8733.

The Honorable Gregory M. Sleet
July 24, 2008
Page 3

Likewise, the Grupo Tea contract confirms that the same accused features were supported in NMA Release 4.0. Given these facts, Cisco cannot credibly argue that Mr. McGowan's testimony is uncorroborated. Nor can Cisco argue that there is not any evidence that the accused products are prior art in view of Cisco's infringement contentions for the '988 patent.

The same holds true for the '622 patent. Although Telcordia maintains that it does not infringe, Cisco's theory of infringement relies on product features that pre-date the patent, evidencing a prior invention, use, and/or sale. Telcordia's documents illustrate this point, showing that as of 1989, NMA facilities allowing communications to a network element were already deployed at several locations across the United States.[6]

The fact that Mr. McGowan did not directly link his testimony to the documents during his deposition is immaterial. Cisco had the opportunity to explore whether the documents refreshed Mr. McGowan's recollection, but it strategically chose not to. Moreover, Cisco's disingenuous attempt to discredit Mr. McGowan's recollections based on the testimony that he was not able to find corroborating documents is misleading. Contrary to what Cisco suggests, Mr. McGowan never represented that his search encompassed all of "Telcordia's library and other files." In fact, Mr. McGowan made clear on multiple occasions that his document search was specifically directed to the oldest *electronic copies* that he could find. Cisco Opening Letter, Ex. 2 [McGowan Tr.], at 58:2-14, 89:9-14. He also clearly acknowledged that he had not yet found older documents because he had not "actually go[ne] to New Jersey and rifl[ed] through the libraries and things like that." Cisco Opening Letter, Ex. 2 [McGowan Tr.], at 89:9-14. Accordingly, Mr. McGowan's statements about his electronic search do not detract from the documentary evidence supporting his recollections. The existence of corroborating documents is entirely consistent with his testimony.

For at least these reasons, Telcordia respectfully submits that sufficient evidence exists supporting Telcordia's position that the accused products are prior art to the patents-in-suit. As such, Cisco's summary judgment request should be denied.

Respectfully,

/s/ *Tiffany Geyer Lydon*

Tiffany Geyer Lydon

c:   Vincent P. Kovalick, Esquire (via electronic mail)
     Jack B. Blumenfeld, Esquire (by hand and via electronic mail)
     Matthew D. Powers, Esquire (via electronic mail)

---

[6] "Memorandum for File: OCS Requirements for NMA," Dec. 16, 1988, produced October 12, 2007 at TCOR 0255752-755.