# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

July 31, 2008

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

The Honorable Gregory M. Sleet
United States District Court
844 King Street
Wilmington, Delaware 19801

**REDACTED
PUBLIC VERSION**

Re:     _Cisco v. Telcordia,_ C.A. No. 07-113-GMS

Dear Chief Judge Sleet:

Cisco's answering summary judgment letter regarding non-infringement purports to create factual disputes. Cisco's alleged "disputes," however, do not address the actual material facts underpinning Telcordia's motion. Indeed, when Cisco's misdirection is stripped away, it is clear that many of Telcordia's grounds for summary judgment remain undisputed. As such, summary judgment of non-infringement is proper.

**Telcordia Cannot Be Liable for Direct Infringement by "Making" or "Selling" or "Offering to Sell"**

Cisco does not dispute that Telcordia does not "make," "sell," or "offer to sell" the claimed methods. Therefore, as a matter of law, Telcordia is entitled to at least partial summary judgment of no direct infringement for the acts of "making," "selling, and "offering to sell" the accused products. This is an important issue, because it will limit the issues for trial and reduce the burden for the Court and jury.

With respect to Cisco's allegation of direct infringement via the "use" provision of 35 U.S.C. § 271, Cisco alleges infringement only when Telcordia tests the accused software in its own labs. However, Cisco's argument that Telcordia "uses" the patented methods is based entirely on mischaracterized and misleading witness testimony. Of course Telcordia tests its software, but the claimed methods require more than just functional steps. They also require certain network configurations and communication messages. There simply is no evidence that Telcordia has ever tested those required features. Cisco inaccurately recounts Peter Farley's testimony when it states that Mr. Farley "confirmed that Telcordia has tested in its own lab in New Jersey every feature of the accused systems." (Cisco Answering Letter, at 1). In fact, when asked about specific features, Mr. Farley states quite clearly that he does not test certain accused features because they are not a requirement of the product and are not supported by the product. Ex. A [Farley Dep. Tr.] at 47:22-48:14, and 56:2-57:22.

**Telcordia Cannot Be Liable for Indirect Infringement of the Asserted Method Claims**

Cisco suggests that it will rely on circumstantial evidence to prove direct infringement by the customers. Cisco is entitled to rely on circumstantial evidence, but the question remains

{00233235;v1}

The Honorable Gregory M. Sleet
July 31, 2008
Page 2

"what does the circumstantial evidence show?"  In this case, the evidence that Cisco points to shows that Telcordia's customers could install the accused software and use some of its features. That does not mean that every customer uses every feature of that software.  Moreover, Cisco's infringement contentions point to additional features that are allegedly developed by customers and are separate from the accused Telcordia software products.  And, there is no evidence that customers develop and use such additional features in conjunction with each and every feature of the accused software. None of the circumstantial evidence that Cisco points to fills in these missing blanks.

Importantly, there are many alternative features, configurations, and messages for the accused software that are not even accused of infringing.  In these circumstances, "hypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (further stating that plaintiff "must prove specific instances of direct infringement or that the accused device necessarily infringes the patent….[T]he mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement of a patent.")  Without evidence of a specific instance of direct infringement, Telcordia cannot be liable for the alleged indirect infringement.

Cisco strings together line after line of unsupported statements and speculates as to how a single customer may allegedly use the accused products.  Despite having concluded fact discovery and submitting over 650 pages of exhibits with its answering letter, Cisco cites noting in the record to support its arguments.  There simply is no evidence of a single customer using each and every step of the claimed methods, nor can there be.

Contrary to what Cisco represents, the claims are in fact directed to different parties to perform different acts.  Indeed, Cisco cannot dispute that the asserted method claims require certain network processes to be performed by independent network elements through the execution of separate software.  The network elements, including the functions they perform and the software they execute, operate separately, independently, and outside the control of any one user of the accused products.  The Federal Circuit's just-announced decision in *Muniauction, Inc. v. Thomson Corp.*, No. 2007-1485, 2008 WL 2717689 (Fed. Cir. July 14, 2008) holds that direct infringement liability cannot be predicated on such an aggregation of activities.  For Cisco to suggest otherwise, it must at least show evidence of a single customer that (1) uses the accused Telcordia products to communicate with network elements, (2) owns, operates and controls the very same network elements it communicates with, and (3) executes software on those network elements. This, Cisco has failed to do.

**Telcordia Does Not Infringe Claim 7 of the '622 Patent**

Cisco suggests that summary judgment based on the claim term socket "seems to warrant further consideration," but essentially falls back on the doctrine of equivalents. (Cisco Answering Letter, at 4).  Cisco does not contest the facts that: (1) the accused NMA and OCS software operate on a VOS platform, not UNIX; and (2) that the accused Elcom software operates with an API that was developed for HP-UX, not "the Berkeley version of AT&T's UNIX operating system" as required by the Court's claim construction.  Given these deficiencies

The Honorable Gregory M. Sleet
July 31, 2008
Page 3

in Cisco's case, there can be no dispute that Telcordia does not literally infringe. As such, Telcordia is at least entitled to partial summary judgment of no literal infringement of claim 7.

Cisco is not entitled to any scope of equivalents with respect to the claim term "socket," because to do so would completely vitiate the express limitations of the Court's construction. *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) ("[A]n element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation.").

Moreover, there can be no equivalents because prosecution history estoppel bars the application of that doctrine for the same reasons that the prosecution history helped construe the term "socket." The Court already concluded as much. Based on its review of the prosecution history, the Court found that "the patentee clearly inform[ed] the patent examiner that work [sic] socket 'has a *precise meaning* set forth in Applicant's Specification, page 3, line 26, through page 4, line 1-9.'" (D.I. 46, at 2 n.1 ) (original emphasis). "The prosecution disclaimer standard is the same standard applicable, in the context of doctrine of equivalents, to the doctrine of argument-based estoppel." *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1363 (Fed. Cir. 2003). Thus, Cisco is estopped from asserting the doctrine of equivalents.

**Telcordia Does Not Infringe Claim 1 of the '988 Patent**

As to the requirements of Claim 1, Cisco does not dispute that a "generic instruction" must be applicable to <u>more than one network element</u>. As to the operation of the Accused Products, Cisco also does not contest the fact that the products require each and every instruction generated to specify the individual network element where the command will be sent and the channel connected to that network element that will carry the instruction. Nor does Cisco dispute the fact that any such instruction generated is <u>not</u> applicable to more than one element, in direct contrast to what the claim requires. On these grounds alone, summary judgment of non-infringement is proper.

Cisco argues—for the first time—that the alleged "generic instruction" is a command for invoking a macro, and that sending device-specific commands one at a time is exactly what the '988 Patent requires. As its very name suggests, however, a command for a macro is a command that is only applicable to a single macro, not "groups of elements," as required by the claims. Likewise, Cisco's contention that the '988 Patent claims the concept of translating a generic command into device-specific commands sent one at a time to each network element contradicts the prosecution history, where the patentee expressly distinguished the prior art on the grounds that it, too, converted a generic command to device-specific commands sent one at a time to each network element. Ex. B. [Request for Reconsideration, July 18, 2001], at TCORDEL 0000558 (distinguishing the prior art from the claims on the grounds that the prior art discloses each individual network element having its own individual instruction generated from a generic instruction). As such, Cisco's arguments are untenable.

Respectfully,

*/s/ Steven J. Balick*

Steven J. Balick

The Honorable Gregory M. Sleet
July 31, 2008
Page 4

SJB/rbg
Attachments

c:      Vincent P. Kovalick, Esquire (via electronic mail; w/attachments)
        Jack B. Blumenfeld, Esquire (by hand, and via electronic mail; w/attachments)
        Matthew D. Powers, Esquire (via electronic mail; w/attachments)

# EXHIBIT A

# REDACTED

**EXHIBIT B**

| 709 | 224 |
|-----|-----|
| Class | Subclass |
| ISSUE CLASSIFICATION |  |

SCANNED 6

6377988

**6377988**

| UNITED STATES SERIAL NUMBER | PATENT DATE | PATENT NUMBER |
|---|---|---|
| 08/836301 | APR 23 2002 | 6377988 |

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 08/836,301 | 06/11/97 | 395 / 709 | 200.65 / 230 | 2758 | ROMERO |

**APPLICANTS**

ADAM SPECTOR, LONDON, GREAT BRITAIN; PAUL ABRAHAM, CROYDON, GREAT BRITAIN.

**CONTINUING DATA***********************
VERIFIED        THIS APPLN IS A 371 OF    PCT/GB95/02617  11/07/95 ✓

Yes ae

**FOREIGN/PCT APPLICATIONS***************
VERIFIED        GREAT BRITAIN        9422722.0        11/10/94 ✓

Yes ae

| Foreign priority claimed 35 USC 119 conditions met | ☑ yes ☐ no ☑ yes ☐ no | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|
| Verified and Acknowledged | Examiner's initials | | GB3 | 5 | 25 | 4 | $1,230.00 | A24840.US |

**ADDRESS**

NIXON & VANDERHYE
1100 NORTH GLEBE ROAD
8TH FLOOR
ARLINGTON VA 22201

**TITLE**

CONTROLLING ELEMENTS OF A TELECOMMUNICATIONS NETWORK

U.S. DEPT. OF COMM./PAT. & TM—PTO-436L (Rev.12-94)

3/14/02 Found Drawings ( 5 sheet set ) 6/11/97        3/14/02
                                                        Applications Examiner

| PARTS OF APPLICATION FILED SEPARATELY | | |
|---|---|---|
| **NOTICE OF ALLOWANCE MAILED** | **CLAIMS ALLOWED** | |
| 12.03.01 | Total Claims **23** | Print Claim **1** |
| MARC D. THOMPSON | | |
| Assistant Examiner | | |
| **ISSUE FEE** | **DRAWING** | |
| Amount Due | Date Paid | MARK H. RINEHART | Sheets Drwg. **5** | Figs. Drwg. **8** | Print Fig. **2** |
|  | 2-28-02 | SUPERVISORY PATENT EXAMINER TECHNOLOGY CENTER 2100 | | | |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of

**SPECTOR et al**                                    Atty. Ref.:  36-1023

Serial No. **08/836,301**                            Group: 2152

Filed: **May 11, 1997**                              Examiner:  A. Romero

For:  **CONTROLLING ELEMENTS OF A
      TELECOMMUNICATIONS NETWORK**

* * * * * * * * * *

July 18, 2001

Assistant Commissioner for Patents
Washington, DC  20231

Sir:

## REQUEST FOR RECONSIDERATION

In response to the Office Action dated April 24, 2001, applicants respectfully request

reconsideration of the above-identified patent application in view of the remarks set forth below.

## REMARKS

Claims 1, 3-14 and 16-25 are presently pending in the instant application.  Applicants

appreciate the Examiner's indication that the final rejection is overcome.

**SPECTOR et al**
**Serial No. 08/836,301**

Gray is directed to a method of automatically managing a network or remote function-executing apparatus from a programmable network control center. According to Gray, a master function memory stores a master function listing of all possible functions to be executed by the apparatus at each site. In managing the network of apparatus, a user composes a listing of plural sites selected from the master site listing and a listing of functions for each site from the master function listing, which are stored in a correlated listing memory section. After the correlated listing has been stored, upon a single execution signal set by the user, commands representing the selected functions are transmitted over communications links to the selected sites, without further participation by the user, and the apparatus at the selected sites executes the functions upon receipt of the commands.

As the Examiner has correctly noted, there is no teaching or suggestion in Gray of converting a generic instruction to group-specific instructions appropriate to each group of elements in which there is at least one of the selected elements. Furthermore, there is no teaching or suggestion in Gray of transmitting to each selected element the group-specific instruction appropriate to its group.

These two important aspects of the claimed invention clearly distinguish the claimed invention over the cited references. First, there is a requirement that the group-specific

**SPECTOR et al**
**Serial No. 08/836,301**

time by avoiding the need to generate instructions for groups that have no selected members. It

is noted that in different control scenarios, the same group may not be "empty" because different

elements will be selected according to the situation being controlled. Second, for each group of

elements only one group-specific instruction is generated. Thus, if there are several elements

which each require identical instructions, processing time is saved by only generating a single

instruction for all elements.

Smith fails to overcome the fundamental deficiencies of Gray noted above. In particular,

Smith discloses a method and apparatus for providing arbitrary definition of groups in a data

communications network management system. Groups are added, modified, merged, deleted or

displayed as desired by the user so that all members of the arbitrarily defined group can be

addressed as a group, for example to do a self test and report results of the test. Collectives can

be defined as members of the group and the collectives can be unpacked at the time of issuance

of a command rather than at the time of creation of the group so that changes to the collective are

reflected as changes to the group automatically. Smith also discloses creation of groups which

are commonly desired and significant group configuration activity is logged to either a printer or

a file.

**SPECTOR et al**
**Serial No. 08/836,301**

there is at least one of the selected elements, and of transmitting to each selected element the group-specific instruction appropriate to its group.

As discussed above, the claims specifically require that the group-specific instructions are converted from the generic instruction if at least one of the previously selected elements requires that group-specific instruction ("converting the generic instruction to group-specific instructions appropriate to each group of elements *in which there is at least one of the elements*" emphasis added). Thus, if there is not at least one selected element in a given group, there is no need to generate a group-specific instruction for that "empty" group. This provides the previously unrecognized advantage of reducing the processing time by avoiding the need to generate instructions for groups that have no selected members. There is simply no teaching or suggestion of this feature in Smith.

Additionally, contrary to the allegations contained in the Office Action, there is no teaching or suggestion in Smith of "converting" as set forth in the claimed invention. Quite to the contrary, Smith requires, at Col. 9, lines 41–45, that the group oriented command is converted to individual commands directed towards each individual member of the group. There is no determination of the propriety of sending the command. At the level discussed in Smith, the

**SPECTOR et al**
Serial No. 08/836,301

beyond this rudimentary method by avoiding any unnecessary duplication in that step by only

generating one command for all members of a group that can use identical commands

Similarly, Gray requires predetermined functions to be carried out in each of a number of

selected site controllers in response to a single command from the operator. In complete

contrast, according to the claimed invention, it is necessary for there to be a plurality of elements

in at least one selected group. The claimed invention does not indiscriminately send commands

to groups.

Moreover, both Gray and Smith teach that individual instructions be transmitted to each

of the elements to be commanded by the initial operator instruction. There is no group of more

than a single member for which all members, receive a group-specific instruction, because in

both Gray and Smith, each element will have its own individual instruction generated, even if

those instructions would be identical. This solution is entirely at odds with the claimed

invention, where one command is generated for all members of a group that can use identical

commands.

As set forth above, it is respectfully submitted that Smith fails to overcome the

fundamental deficiencies noted with respect to Gray. Therefore, it is respectfully submitted that

even if, *arguendo*, the combination of Gray and Smith were proper, the combination nevertheless

**SPECTOR et al**
**Serial No. 08/836,301**

fails to render the claimed invention obvious. Accordingly, reconsideration and withdrawal of
the rejection are respectfully requested.

In view of the foregoing, it is respectfully submitted that the entire application is in
condition for allowance. Favorable reconsideration of the application and prompt allowance of
the claims are earnestly solicited.

Should the Examiner deem that further issues require resolution prior to allowance, the
Examiner is invited to contact the undersigned attorney of record at the telephone number set
forth below.

Respectfully submitted,

**NIXON & VANDERHYE P.C.**

By: _____

Updeep S. Gill
Reg. No. 37,334

USG:led
1100 North Glebe Road, 8th Floor
Arlington, VA 22201-4714
Telephone: (703) 816-4000
Facsimile: (703) 816-4100

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of

SPECTOR et al

Serial No.  08/836,301

Filed:  May 11, 1997

Title:  CONTROLLING ELEMENTS OF A TELECOMMUNICATIONS NETWORK

Atty Dkt. 36-1023

C#          M#

Group Art Unit:  2152

Examiner:  A. Romero

Date:  July 18, 2001

2152

OIPE
JUL 1 8 2001
PATENT & TRADEMARK

RECEIVED
JUL 2001
Technology Center 2100

Assistant Commissioner for Patents
Washington, DC  20231

Sir:

### RESPONSE/AMENDMENT/LETTER

This is a response/amendment/letter in the above-identified application and includes an attachment which is hereby incorporated by reference and the signature below serves as the signature to the attachment in the absence of any other signature thereon.

**Fees are attached as calculated below:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total effective claims after amendment **23** minus highest number previously paid for **23** (at least 20) = **0** x $ 18.00 | | | | | | $ | 0.00 |
| Independent claims after amendment **2** minus highest number previously paid for **3** (at least 3) = **0** x $ 80.00 | | | | | | $ | 0.00 |
| If proper multiple dependent claims now added for first time, add $270.00 (ignore improper) | | | | | | $ | 0.00 |
| Petition is hereby made to extend the current due date so as to cover the filing date of this paper and attachment(s) ($110.00/1 month; $390.00/2 months; $890.00/3 months) | | | | | | $ | 0.00 |
| Terminal disclaimer enclosed, add $ 110.00 | | | | | | $ | 0.00 |
| ☐ First/second submission after Final Rejection pursuant to 37 CFR 1.129(a) ($710.00)  ☐ Please enter the previously unentered , filed  ☐ Submission attached | | | | | | $ | 0.00 |
| | | | | | **Subtotal** | $ | 0.00 |
| If "small entity," then enter half (1/2) of subtotal and subtract  ☐ Applicant claims "small entity" status.  ☐ Statement filed herewith | | | | | | -$ | 0.00 |
| Rule 56 Information Disclosure Statement Filing Fee ($180.00) | | | | | | $ | 0.00 |
| Assignment Recording Fee ($40.00) | | | | | | $ | 0.00 |
| Other: | | | | | | | 0.00 |
| | | | | | **TOTAL FEE ENCLOSED** | $ | 0.00 |

The Commissioner is hereby authorized to charge any <u>deficiency</u> in the fee(s) filed, or asserted to be filed, or which should have been filed herewith (or with any paper hereafter filed in this application by this firm) to our Account No. 14-1140.  A <u>duplicate</u> copy of this sheet is attached.