IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CISCO SYSTEMS, INC. and           )
CISCO TECHNOLOGY, INC.,           )
                                  )
         Plaintiffs,              )        **REDACTED**
                                  )        **PUBLIC VERSION**
         v.                       )
                                  )        C.A. No. 07-113-GMS
                                  )
TELCORDIA TECHNOLOGIES, INC.,     )
                                  )
         Defendant.               )

**TELCORDIA'S MOTION TO PRECLUDE CISCO FROM BELATEDLY
ACCUSING TWO NEW PRODUCTS OF INFRINGEMENT**

## I. INTRODUCTION

Telcordia respectfully seeks the Court's assistance to prevent significant prejudice caused

by Cisco's eleventh-hour decision to ignore the Court's schedule and accuse two completely

different and never before identified Telcordia products of infringing the patents-in-suit. Given

that the parties have already served opening expert reports, and are now preparing rebuttal expert

reports and pre-trial statements, Cisco's unexpected recent maneuver is especially prejudicial. As

discussed below, Telcordia built its entire case, from claim construction, to noninfringement, to

invalidity and unenforceability, based on Cisco's consistent assertion of infringement against

only four Telcordia products.  Now, with discovery having been closed for over four months, the

Court's claim construction ruling having been made nearly two months ago, the Court's decision

to preclude summary judgment motions having been made, and Telcordia' expert report on

invalidity having been served, Cisco has changed the case by accusing two new--and very

different--Telcordia products.  Under Fed. R. Civ. P. 37(c)(1), Telcordia respectfully requests that the Court restrict Cisco from doing so.

Cisco's surprise attempt to redefine this litigation so late in the Court's schedule is at complete odds with its conduct in the prior litigation between the parties, where Cisco complained that Telcordia had not timely named new products, even though the discovery period in that case had not yet even ended.  The Court may recall administering this issue over the course of several hearings.  In the end, the Court required Telcordia to cut back significantly its supplemental list of accused products. If Telcordia was prevented from adding new products under that schedule, in which discovery had not yet closed, then Cisco should be prevented from adding new products under the schedule of this case, given that we are now only about two months from trial.

## II. ARGUMENT

Until last week, throughout the entire course of this litigation, Cisco had only alleged infringement by four Telcordia products.  In its Complaint filed in February 23, 2007, Cisco accused Telcordia's Element Communicator CE, Granite Inventory, and NMA System CE of infringing the two asserted patents.  Exhibit 1 [Cisco's Complaint], at 3. Likewise, in the Joint Status Report filed in July 2007, Cisco again accused only these same Telcordia products. Exhibit 2 [Joint Status Report], at 2.

Discovery proceeded, and Telcordia collected and produced documents concerning these accused products.  Telcordia also served contention interrogatories asking Cisco to identify the accused Telcordia products, and, on March 25, 2008, Cisco responded          **REDACTED**

**REDACTED**                                        Exhibit 3 [Cisco's Responses to

Telcordia's First Set Of Interrogatories Nos. 1-9], at 4-9.

During discovery, Cisco served notices for depositions of Telcordia witnesses under Fed.

R. Civ. P. 30(b)(6). The only products that Cisco specifically identified in its Topics were NMA,

Element Communicator, and OCS. Telcordia provided witnesses with respect to these products.

As is typical, and at tremendous expense, Telcordia pursued the prior art and developed

invalidity positions that fit a claim scope consistent with Cisco's allegations.

Near the end of discovery, the parties engaged in "give-and-take" negotiations

concerning claim constructions, and Telcordia advanced and agreed to certain constructions

based on Cisco's representations and contentions. Under the Court's scheduling order, fact

discovery ended on March 31, 2008, and the Court entered its claim construction order on June

30, 2008.

Recently, in its correspondence to the Court concerning Telcordia's requests for

permission to file for summary judgment of noninfringement, Telcordia addressed the same

accused products, and Cisco responded concerning only these products. Exhibit 4 [Cisco's

Answering Summary Judgment Letter, July 24, 2008]. Indeed, the Court recently rendered its

decision denying Telcordia's request to file for summary judgment based on Cisco's

representations about those products. Notably absent from the summary judgment letters is any

mention of INTAS or Transport.

Finally, on August 8, 2008, Telcordia served its opening expert report on invalidity. Again, the expert's positions are all based on the scope of claims and assertions made by Cisco throughout the litigation.

On that same day, Cisco served its opening expert reports on infringement and damages, accusing for the first time two additional Telcordia products:

### REDACTED

Fed. R. Civ. P.. 37(c)(1) is meant to prevent such last minute surprises.

The two new products are not similar and do not perform the same functions as the originally accused products. The originally accused products might be used by customers to monitor or manage networks. The newly accused INTAS product might be used by customers to test special service circuits, like telephone circuits, while the newly accused Transport product may be used by customers to set up new telephone circuits and switches.

Moreover, although INTAS and Transport were just identified in this case, Cisco has known about these products since day one. Telcordia's website, for example, includes as much information about these products as the originally accused products. Further, Cisco learned about INTAS through discovery in a prior case between the parties at least as early as March 2006. Thus, Cisco and its lawyers have known or should have known about these additional products since the very beginning, but never before mentioned them.

The prejudice that arises from such surprise, late disclosure is obvious and has been the subject of great debate between the parties and the Court in prior litigation before the Court. The Court will recall that Cisco complained loudly about Telcordia's attempts to identify additional accused Cisco products as discovery developed in that case. Indeed, the Court required Telcordia to cut back a very significant number of accused products from its supplemental list, even though the discovery period in that case had not yet closed, the products were related, and claim construction was just beginning. If Telcordia was denied the ability to name new products under those circumstances, then Telcordia respectfully submits that Cisco should be prevented from adding new products under these far more prejudicial circumstances. In such situations, one party will always be prejudiced, but, under these circumstances, Cisco should be the party to suffer the consequences of its own failure to conduct this case in accordance with the Court's schedule.

## III. CONCLUSION

For the foregoing reasons, Telcordia respectfully requests that Cisco be prevented from accusing any Telcordia products of infringing the asserted patents other than the previously accused NMA System CE, Element Communicator, OCS, and Granite Inventory.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Defendant*
*Telcordia Technologies, Inc.*

*Of Counsel:*

Vincent P. Kovalick
Christopher T. Blackford
Brandon Rash
Finnegan, Henderson, Farabow,
    Garrett & Dunner, L.L.P.
901 New York Avenue, NW
Washington, D.C. 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Nathan A. Sloan
Finnegan, Henderson, Farabow,
    Garrett & Dunner, L.L.P.
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA 30308-3263
Telephone: (404) 653-6400
Facsimile: (404) 653-6444

Dated: August 22, 2008

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1

I hereby certify that the subject of the attached motion has been raised with opposing counsel, but that they would not respond to our inquiry by the requested time. Given the urgency of this issue, and the fact that this is the kind of dispute in which there seems virtually no prospect that agreement can be reached, we did not consider it prudent to wait. However, if opposing counsel inform us that they will agree to the requested relief, we will withdraw this motion immediately.

/s/ Steven J. Balick

Steven J. Balick

{00236427;v1}

# EXHIBIT 1
# (Complaint)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CISCO SYSTEMS, INC., and<br>CISCO TECHNOLOGY, INC., | ) | |
| | ) | Civil Action No. ___ - 113 |
| Plaintiffs, | ) | |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| TELCORDIA TECHNOLOGIES, INC., | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Cisco Systems, Inc. ("Cisco Systems") and Cisco Technology, Inc. ("Cisco Technology") (collectively "Cisco"), by and for their complaint for infringement of United States Patent Nos. 5,142,622 ("the '622 Patent") and 6,377,988 ("the '988 Patent") against defendant Telcordia Technologies, Inc. ("Telcordia"), allege as follows:

### THE PARTIES

1.      Cisco Systems is a corporation organized under the laws of California. Cisco Systems maintains its headquarters at 170 West Tasman Drive, San Jose, California 95134.

2.      Cisco Technology is a corporation organized under the laws of California. Cisco Technology maintains its headquarters at 170 West Tasman Drive, San Jose, California 95134. Cisco Technology is a wholly-owned subsidiary of Cisco Systems.

3.      Upon information and belief, Telcordia is a corporation organized under the laws of Delaware, with its principal place of business at One Telcordia Drive, Piscataway, New Jersey 08854.

JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Telcordia based on its significant contacts with this district, including, but not limited to, Telcordia's incorporation in this district, Telcordia's distribution, sale, and offer for sale of infringing communication network products within this district, and Telcordia's active inducement of and/or contribution to infringement within this district.

6.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

CAUSE OF ACTION FOR PATENT INFRINGEMENT

7.      Cisco repeats and re-alleges the allegations of Paragraphs 1-6 as though fully set forth herein.

8.      The '622 Patent, entitled "System for Interconnecting Applications Across Different Networks of Data Processing Systems by Mapping Protocols Across Different Network Domains" was duly and lawfully issued to inventor Gary L. Owens by the United States Patent and Trademark Office ("PTO") on August 25, 1992.  Cisco Systems owns the '622 Patent and holds all right, title, and interest in the '622 Patent, including the rights to sue for infringement and seek damages and injunctive relief.  A copy of the '622 Patent is attached hereto as Exhibit A.

9.      The '988 Patent, entitled "Controling Elements of a Telecommunications Network" was duly and lawfully issued to inventors Adam Spector and Paul Abraham by the PTO on April 23, 2002.  Cisco Technology owns the '988 Patent and holds all right, title, and interest in the '988 Patent, including the rights to sue for infringement and seek damages and injunctive relief.  A copy of the '988 Patent is attached hereto as Exhibit B.

2

## FIRST CLAIM

### *(Patent Infringement Of The '622 Patent)*

10.     On information and belief, Telcordia has been and is infringing one or more claims of the '622 Patent, directly and/or indirectly, pursuant to 35 U.S.C. § 271, in connection with certain of its communication network products, including, without limitation, Telcordia Element Communicator CE, Granite Inventory, and NMA System CE.

11.     On information and belief, Telcordia's infringement of the '622 Patent has been and is willful, and will continue unless enjoined by this Court.  Cisco has suffered, and will continue to suffer, irreparable injury as a result of this willful infringement.  Pursuant to 35 U.S.C. § 284, Cisco is entitled to damages for infringement and treble damages.  Pursuant to 35 U.S.C. § 283, Cisco is entitled to a permanent injunction against further infringement.

12.     This case is exceptional and, therefore, Cisco is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

## SECOND CLAIM

### *(Patent Infringement Of The '988 Patent)*

13.     On information and belief, Telcordia has been and is infringing one or more claims of the '988 Patent, directly and/or indirectly, pursuant to 35 U.S.C. § 271, in connection with certain of its communication network products, including, without limitation, Telcordia Element Communicator CE, Granite Inventory, and NMA System CE.

14.     On information and belief, Telcordia's infringement of the '988 Patent has been and is willful, and will continue unless enjoined by this Court.  Cisco has suffered, and will continue to suffer, irreparable injury as a result of this willful infringement.  Pursuant to 35 U.S.C. § 284, Cisco is entitled to damages for infringement and treble damages.  Pursuant to 35 U.S.C. § 283, Cisco is entitled to a permanent injunction against further infringement.

3

15.    This case is exceptional and, therefore, Cisco is entitled to attorneys' fees pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Cisco prays for relief as follows:

A.    That Telcordia be adjudged to have infringed the '622 and '988 Patents;

B.    That Telcordia, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with any of them, be preliminarily and permanently restrained and enjoined from directly or indirectly infringing the '622 and '988 Patents;

C.    An award of damages to compensate Cisco for Telcordia's infringement, pursuant to 35 U.S.C. § 284, said damages to be trebled because of Telcordia's willful infringement;

D.    An assessment of pre-judgment and post-judgment interest and costs against Telcordia, together with an award of such interest and costs;

E.    That Telcordia be directed to pay Cisco's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

F.    That Cisco have such other and further relief as this Court may deem just and proper.

4

<u>JURY DEMAND</u>

Cisco demands a trial by jury on all issues amenable to trial by jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (No. 1014)
Leslie A. Polizoti (No. 4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
  *Attorneys for Plaintiffs*
  *Cisco Systems, Inc. and Cisco Technology, Inc.*

*Of Counsel:*
Matthew D. Powers
Edward R. Reines
WEIL, GOTSHAL & MANGES
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Paul E. Torchia
WEIL, GOTSHAL & MANGES
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

February 23, 2007

# EXHIBIT 2
# (Joint Status Report - Filed 7/23/2007)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CISCO SYSTEMS, INC., and<br>CISCO TECHNOLOGY, INC.,<br><br>Plaintiffs,<br>v.<br><br>TELCORDIA TECHNOLOGIES, INC.<br><br>Defendant. | Civil Action No. 07-113-GMS |

## JOINT STATUS REPORT

Pursuant to the Court's July 20, 2007 Notice of Rule 16 Scheduling Conference (D.I. 9), Fed. R. Civ. P. 16, and Local Rule 16.2(b), counsel for Cisco Systems, Inc. and Cisco Technology, Inc. (collectively "Cisco") and counsel for Telcordia Technologies, Inc. ("Telcordia") submit this Joint Status Report in preparation for the Status and Scheduling Conference before the Court on July 24, 2007. Counsel will appear and be prepared to further discuss these and other matters that the Court may raise.

## I.    JURISDICTION AND VENUE

The parties agree that the Court has jurisdiction over the subject matter of, and the parties to, this action. No additional parties remain to be served.

## II.    SUBSTANCE OF ACTION

Plaintiff Cisco filed this action on February 23, 2007 against defendant Telcordia charging Telcordia with willful infringement of two Cisco patents. (D.I. 1).

Cisco claims that certain Telcordia communication network products infringe Cisco's U.S. Patent Nos. 5,142,622 ("the '622 Patent") and 6,377,988 ("the '988 Patent")

(collectively "the Cisco patents"). The accused Telcordia products include Telcordia's Granite Inventory, Telcordia Element Communicator CE, and NMA System CE.

Telcordia filed an Answer and Counterclaims on April 16, 2007 in response to Cisco's complaint. (D.I. 7). Telcordia denies that it has infringed any of the Cisco patents and asserts counterclaims alleging that the Cisco patents are invalid and unenforceable for inequitable conduct, and that Cisco's claims and damages are barred by the following affirmative defenses: laches, estoppel, waiver, acquiescence, and marking. Finally, Telcordia seeks a declaratory judgment that the Cisco patents are invalid, unenforceable and not infringed.

On May 7, 2007, Cisco filed a Reply to Telcordia's Counterclaims. (D.I. 8). Cisco denies that the Cisco patents are invalid or unenforceable. Cisco also asserts that Telcordia's counterclaims are barred because they fail to state a claim on which relief can be granted and because Telcordia has not suffered, and will not suffer, any detriment, injury or damage.

## III.   IDENTIFICATION OF ISSUES

To the extent known and understood at this early stage in the proceedings, the principal factual and legal issues in dispute in this matter are typical of those in most patent cases and include the following:

a)   infringement of one or more claims of the patents in suit;

b)   willful infringement of one or more claims of the patents in suit;

c)   validity of the claims of the patents in suit;

d)   enforceability of the patents in suit;

e)   the defenses set forth in Telcordia's Answer and Counterclaims as summarized in section II above;

f)    the amount of damages should Telcordia be found liable;

g)    injunctive relief, if any, should Telcordia be found liable; and

h)    any further relief, including, without limitation, an award of attorneys'
fees and costs under, *inter alia*, 35 U.S.C. § 285 to either Cisco or
Telcordia

## IV.    NARROWING OF ISSUES

### A.    Can the issues in litigation be narrowed by agreement or by motions?

At the present time, the parties are unable to narrow the issues in litigation by
agreement.  The parties contemplate being able to narrow the issues by eliminating claims and/or
defenses, and by requesting permission to file summary judgment motions consistent with the
Court's rules and the schedule set forth in section XII.B below.

### B.    Are there dispositive or partially dispositive issues appropriate for decision on motion?

At the present time, the parties have not identified any dispositive or partially
dispositive issues for decision on motion prior to discovery.

## V.    RELIEF

### A.    What specific relief does plaintiff seek?

Cisco seeks a permanent injunction, prohibiting Telcordia's continued
infringement of the Cisco patents.  Cisco further seeks damages amounting to a reasonable
royalty for infringement of its patents, trebled or increased damages due to the Telcordia's
willful infringement of the Cisco patents, and pre- and post-judgment interest on its damages
awards.  Cisco also seeks an award of its attorneys' fees, costs, and expenses.

**B.    What is the amount of damages sought and generally how is it computed?**

At this stage of the proceedings, Cisco believes, and Telcordia does not dispute, that it is premature to identify the amount of damages sought. Cisco seeks damages in the form of a reasonable royalty as applied to each infringing product and/or process made, sold, offered for sale, used, or imported into the United States, either directly or indirectly, by Telcordia.

## VI.    AMENDMENT OF PLEADINGS

The parties are not aware of any amendments needed to the pleadings at this time, but reserve the right to amend their pleadings by stipulation and/or leave of the Court should the need arise.

## VII.    JOINDER OF PARTIES

The parties are not aware of any additional parties that need to or should be joined in this action at this time, but reserve the right to join additional parties by stipulation and/or by leave of the Court should the need arise.

## VIII.    DISCOVERY

**A.    Discovery contemplated by each party and the amount of time it may take to complete discovery?**

Discovery related to the infringement issues in this case will likely be directed to the design, specifications, structures, functions, and uses of the accused products. That discovery will likely be directed to Telcordia as well as to third-party suppliers of components for the accused products.

Discovery related to the patent validity and enforceability issues will likely be directed to the conception and reduction to practice of the inventions disclosed in the Cisco

patents and the prosecution of the applications that resulted in the Cisco patents before the U.S. Patent and Trademark Office, and Cisco's and/or third-party prior art activities.

Discovery related to the damages issues in this case will likely be directed to the parties' licensing experience, practices, strategies, and interactions between the parties, as well as to records reflecting the manufacture, use, sales, offers for sale, and importation into the United States of the accused products and Telcordia's revenues and profits from those activities.

As for the amount of time it may take to complete discovery, see the proposed discovery schedule set forth in section XII.B below.

**B.      Can discovery be limited?**

At the present time, the parties do not believe that discovery can be limited.

**C.      Are less costly and time-consuming methods available to obtain necessary information?**

The parties do not believe that other less costly or time-consuming methods are available for the exchange of discovery materials.

## IX.      ESTIMATED TRIAL LENGTH

**A.      Is it feasible or desirable to bifurcate issues for trial?**

The parties agree that it may be premature to address the order or structure of the trial at this early stage.  The parties respectfully request two weeks of trial.

**B.      Is it possible to reduce the length of the trial by stipulations, use of summaries or statements, or other expedited means of presenting evidence?**

The parties will work together on ways to reduce the length of trial to the extent possible.  At this early stage, it is premature to identify which means the parties may utilize to accomplish this goal.

## X.    JURY TRIAL

Both parties have requested a jury trial on all issues so triable.

## XI.    SETTLEMENT

### A.    Have there been settlement discussions?

The parties have periodically engaged in settlement discussions to try to reach a global resolution of their disputes. The parties anticipate having further discussions, however no settlement has be reached at this time.

### B.    What are the prospects for settlement?

To date, the parties have been unable to resolve their differences.

### C.    Is referral to the Magistrate for mediation or other ADR mechanism appropriate?

The parties believe that discussing settlement before the Magistrate Judge and/or a mediator would be appropriate.

## XII.    OTHER MATTERS

### A.    Protective Order

Because confidential information will have to be exchanged in this action, the parties agree that a protective order will be necessary and will attempt to agree on the form of such an order.

### B.    Scheduling

The parties propose the following additional scheduling terms:

1.    Initial Disclosures pursuant to Fed. R. Civ. P. 26(a) will be exchanged on or before August 14, 2007.

2.    The parties will complete fact discovery by July 15, 2008.

3.    On or before March 4, 2008, the parties shall exchange a list of disputed claim terms. On or before March 25, 2008, the parties shall exchange proposed definitions for the disputed claim terms.  On or before April 8, 2008, the parties shall meet and confer regarding those disputed claim terms in an effort to narrow the issues for resolution by the Court.  Opening claim construction briefs shall be filed on or before May 13, 2008.  All answering briefs shall be filed on or before May 27, 2008.

4.    The parties will serve opening expert reports on issues for which they bear the burden of proof on or before August 26, 2008, responsive expert reports will be due on or before September 23, 2008, and reply expert reports, if necessary, will be due on or before October 7, 2008.

5.    The parties will complete expert discovery, including depositions of experts, on or before November 18, 2008.

6.    The parties will submit any letter briefs seeking permission to file summary judgment motions on or before December 2, 2008, answering letter briefs will be filed within fourteen (14) days thereafter, and reply letter briefs will be filed within ten (10) days thereafter.

7.    Should the Court permit the filing of summary judgment motions, an opening brief and supporting affidavits, if any, shall be served and filed within fifteen (15) days after the Court permits such motion, the answering brief and supporting affidavits shall be filed within fifteen (15) days after service of the opening brief, and the reply shall be filed within fifteen (15) days after service of the answering brief.

8.    On or before December 2, 2008, the parties shall submit a joint agenda identifying any *Daubert* issues that they anticipate raising.

-7-

9.    At least thirty (30) days before a joint pretrial order in a case is due, Cisco will send a draft pretrial order to Telcordia, and Telcordia will provide comments and additional information to Cisco at least fifteen (15) days before the joint pretrial order is due.

10.    Opening briefs on all motions *in limine* shall be filed on or before six (6) weeks prior to the Pretrial Conference. All answering briefs on all motion in limine shall be filed within fourteen (14) days from filing of the opening briefs. All reply briefs on all motions *in limine* shall be filed within seven (7) days from filing of the answering briefs.

11.    Discovery Matters:

a)    The parties agree that each side should be permitted to serve up to 25 interrogatories on the other side.

b)    The parties agree that each side should be permitted to propound up to 100 requests for admission on the other side.

c)    The parties agree that each side should be permitted up to 70 hours of on-the-record deposition time.

## XIII.  STATEMENT THAT COUNSEL HAVE CONFERRED ABOUT EACH OF THE ABOVE MATTERS:

Counsel for the parties have conferred about each of the agenda items set forth in the Court's Notice of Rule 16 Scheduling Conference (D.I. 9).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (No. 1014)
Leslie A. Polizoti (No. 4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiffs*
*Cisco Systems, Inc. and Cisco Technology, Inc.*

*Of Counsel:*
Matthew D. Powers
Edward R. Reines
WEIL, GOTSHAL & MANGES
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

Paul E. Torchia
WEIL, GOTSHAL & MANGES
767 Fifth Avenue
New York, NY  10153
(212)  310-8000

Dated: July 23, 2007

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (No. 2114)
John G. Day (No. 2403)
Tiffany Geyer Lydon (No. 3950)
500 Delaware Ave., 8th Fl.
P.O. Box 1150
Wilmington, Delaware  19899
(302) 654-1888
*Attorneys for Defendant*
*Telcordia Technologies, Inc.*

*Of Counsel:*
Donald R. Dunner
Vincent P. Kovalick
FINNEGAN, HENDERSON,
FARABOW, GARRETT &
DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001
(202) 408-4000

**EXHIBIT 3**
**(Cisco Systems, Inc and Cisco Technology,**
**Inc.'s Responses to Telcordia's First Set of**
**Interrogatory Nos 1-9)**
**FILED UNDER SEAL**

# REDACTED

**EXHIBIT 4**
**(Cisco's July 24, 2008 - Letter in Opposition to**
**Telcordia's Opening Letter re: Motion for**
**Summary Judgment)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. Box 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302.351.9291
jblumenfeld@mnat.com

Original Filing Date:
July 24, 2008

The Honorable Gregory M. Sleet                    **BY ELECTRONIC FILING**
United States District Court
844 North King Street
Wilmington, DE 19801                              REDACTED VERSION
                                                  Redacted Filing Date:
    Re:    _Cisco v. Telcordia,_ No. 07-113-GMS   July 31, 2008

Dear Chief Judge Sleet:

    In its opening summary judgment letter, Telcordia presents a number of arguments that it
contends pose "fundamental, legal infringement issues" and supposedly establish that this case is
"ripe for summary judgment." Telcordia's request ignores not only the evidence that was
uncovered in discovery (and will be further explored when expert discovery commences), but the
very foundations of summary judgment law. In so doing, Telcordia asks this Court to draw
factual inference upon factual inference against Cisco and in favor of itself. Telcordia attempts
to veil these inferences in caselaw citations and attorney argument to try to avoid the very real
factual disputes that preclude summary judgment. Telcordia's request to move for summary
judgment should be denied.

**Telcordia Can Be Liable For Direct Infringement Of The Asserted Method Claims**

    Telcordia begins its letter with the contention that it cannot be liable for direct
infringement because it "does not 'make' or 'sell'" the associated hardware that is necessary for
its software to execute" and thus that "Telcordia's acts of 'making' and 'selling' its software
cannot and do not amount to a direct infringement."

    Notably absent from Telcordia's letter is any mention of Telcordia's '_use_' of the patented
method, which constitutes direct infringement under Section 271(a). Even assuming for the sake
of argument that Telcordia is correct that it never makes or sells the hardware on which its
software runs and thus cannot infringe through those acts, Telcordia's own admissions confirm
that Telcordia in fact _uses_ the patented methods and thus very well can be liable for direct
infringement. Specifically,

REDACTED

    This testing is a use of the accused methods in the United States and itself constitutes a

The Honorable Gregory M. Sleet
Page 2
July 24, 2008

direct infringement under 35 U.S.C. § 271(a).  As a result, Telcordia's request for leave to seek summary judgment of no direct infringement should be rejected on this basis alone.

**Material Factual Disputes Preclude Summary Judgment On Indirect Infringement**

      Telcordia's second basis for requesting summary judgment is as divorced from the factual record and principles of summary judgment as its first.  This time, Telcordia's summary judgment theory is that it cannot be liable for indirect infringement because Cisco has not subpoenaed any Telcordia customers to identify a specific instance of direct infringement necessary for an indirect infringement finding.  Telcordia argues that even if the accused methods fall within the scope of the claim, Cisco has not shown that anyone has practiced the accused methods.  Once again, the law and facts omitted from Telcordia's letter are telling.

      At the outset, Telcordia fails to acknowledge the legal principle that Telcordia itself trumpeted when it was the plaintiff in its case against Cisco, where the shoe was on the other foot.  Just last year, in the *Telcordia v. Cisco* case, it was Telcordia that had opted not to subpoena *Cisco* customers for evidence of underlying instances of direct infringement and instead to proceed to trial on the basis of circumstantial evidence.  When Cisco pointed this out, Telcordia was quick to note that "the law provides that the elements of a claim for indirect infringement may be shown through circumstantial evidence."  Ex. C [Ex. I3.B to Final Pretrial Order in Case No. 04-876-GMS] at 25; *see also, e.g., Molec, Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (holding that circumstantial evidence is adequate proof of direct infringement); *Lucent Techs., Inc. v. Gateway, Inc.*, 2008 WL 2491955 at *10-11 (S.D. Cal. June 19, 2008) (cataloging cases).  Having relied on this law in its case against Cisco, Telcordia's failure to even acknowledge it here is particularly surprising.

      As for the facts, Telcordia again ignores those that are most harmful to its request for summary judgment.  Cisco will show both through factual evidence and through the parties' experts (expert discovery is upcoming) that

REDACTED

[1]

      As one would expect based on this, Telcordia's actions resulted in precisely the instances of direct infringement it failed to acknowledge in its letter.  As one example, Telcordia's Rule

---

[1]      Similarly, for the '622 Patent,

REDACTED

The Honorable Gregory M. Sleet
Page 3
July 24, 2008

30(b)(6) witness on *inter alia* the "structure, characteristics and operation (actual or intended)" and "the installation, setup, maintenance and customer support" of the functionality accused of infringing the '988 Patent testified that

REDACTED

     As Telcordia itself acknowledged in the prior case, circumstantial evidence of this nature can support an ultimate finding of direct infringement and, at a minimum, is more than sufficient to create a material factual dispute precluding summary judgment. *See, e.g., Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1375-77 (Fed. Cir. 2005) (affirming denial of JMOL of no indirect infringement based in part on strong circumstantial evidence of direct infringement including product literature accompanying the product at issue); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006).[2] In short, the threshold of circumstantial evidence of underlying direct infringement necessary to preclude summary judgment of no indirect infringement is far exceeded here. Whatever disputes remain as to direct infringement by Telcordia's customers, they remain for the jury to decide.

**Material Factual Disputes As To Divided Infringement Preclude Summary Judgment**

     In its letter, Telcordia suggests that summary judgment of non-infringement is appropriate because infringement by the accused Telcordia software products is divided among multiple parties. As with its other arguments, Telcordia's argument misses the mark.

     At the outset, the evidence discussed above supports a finding that Telcordia itself directly infringes the asserted method claims through, at least, the testing it runs in its own testing labs in New Jersey. In those instances, each step of the method claim would be performed on Telcordia's own network by Telcordia's own people.

     Moreover, even in the cases where the direct infringement is by Telcordia's customers and not by Telcordia itself, Telcordia has not come close to showing (nor could it) that multiple parties are required for the underlying direct infringements. To the contrary, the asserted claims of the patents-in-suit both require that the method be performed by only a single Telcordia

---

[2]    As the Court is all too familiar from the prior case, where the rubber really meets the road on the issue of underlying direct infringement is not on the threshold question of whether there is circumstantial or direct evidence of a single specific instance of direct infringement sufficient to preclude summary judgment of no indirect infringement (which there was in the prior case and is here), but whether there is evidence of the *quantum* of that underlying infringement as required for the damages analysis. The latter issue was at the heart of Cisco's motion *in limine* on damages in the prior case (to which *Golden Blount* was central), *see* D.I. 343 in Case No. 04-876-GMS, and will be an issue addressed by the parties' damages experts in this case. It is not an issue relevant to Telcordia's summary judgment letter.

The Honorable Gregory M. Sleet
Page 4
July 24, 2008

customer (i.e., a single direct infringer). Even a cursory review of claim 1 of the '988 Patent reveals that a single Telcordia customer would perform each step of the asserted method claim. As an example, several of Telcordia's customers are telephone companies providing local telephone services. These customers would perform the accused method whenever a network manager generates, using the NMA system, a generic instruction that she wants to communicate to a group of network elements (e.g., telephone switches) within that telephone company's network and that instruction is then converted by the NMA system to specific instructions sent to those switches. Nowhere in that process is anyone other than a single Telcordia customer involved in the direct infringement underlying Telcordia's indirect infringement.

Similarly, in the case of the '622 Patent, it is Telcordia's customers who each, on their own, directly infringe the asserted method claim. Telcordia's suggestion to the contrary is based on a misapprehension of not only the claim language but of Cisco's infringement contentions. To be sure, asserted claim 7 requires that an application program is executed on a first and second processing system. But these systems may well be within the same customer's network. Indeed, Telcordia appears to fundamentally misunderstand Cisco's infringement contentions when it argues that steps of the asserted method claim are met by Cisco's own network devices operating Cisco's own software. In fact, it is Telcordia's customers who deploy Cisco's own network devices (as an example) within their networks, and by executing applications on Cisco's or other equipment manufacturers' devices operating within their own networks, meet the claim requirement.

It is perhaps understandable that Telcordia's motion would be based on these misunderstandings of the asserted claims and Cisco's infringement contentions because expert discovery has yet to even commence. Once it is underway, expert discovery will only serve to further confirm that Cisco's infringement allegations go to direct infringement of the asserted method claims by Telcordia's customers, *one at a time.* There is at least a material dispute of fact that precludes summary judgment on the question of divided infringement.

**A Material Factual Dispute Precludes Summary Judgment On Claim 7 Of The '622 Patent**

Telcordia's fourth proposed ground for summary judgment is based on this Court's construction of "socket" to mean "an application program interface (API) that was *developed for the Berkeley version of AT&T's UNIX operating system ....*" As Cisco and surely the Court anticipated, Telcordia has latched on to this claim construction to support a non-infringement argument that the accused products do not operate on a system developed for the Berkeley version of AT&T's UNIX operating system. At first blush, Telcordia's argument seems to warrant further consideration. The problem with this is, of course, that summary judgment of non-infringement cannot be based on a superficial comparison of the claims to the accused products devoid of an evidentiary analysis or the testimony of experts on how the claim limitations may or may not be met by the accused products.

Here, that problem is particularly acute because the record shows that Telcordia's non-infringement theory is far from clean-cut. To the contrary, the evidence shows that this claim requirement is in fact met by the accused products, or at a minimum, would be met under the

The Honorable Gregory M. Sleet
Page 5
July 24, 2008

doctrine of equivalents. As but one example, a *BSD Sockets Interface Programmer's Guide* on HP's UX (UNIX-based) operating system explains that the sockets used by that system are in fact based on the sockets developed at Berkeley and function in much the same way. *See, e.g.,* Ex. E [BSD Sockets Interface Programmer's Guide] at CISCO-0000122 ("HP's implementation of BSD Sockets is a full set of sockets from the networking services originally developed by the University of California at Berkeley (UCB)."). Expert testimony as to any insubstantial differences between the accused products and an API developed for the Berkeley version of AT&T's UNIX operating system will serve to further illuminate the infringement debate. As such, Telcordia's motion for summary judgment as to infringement under these circumstances would flip summary judgment on its head and require the Court to draw every inference in Telcordia's favor. Telcordia's request that the Court do so should be rejected.

**A Material Factual Dispute Precludes Summary Judgment On Claim 1 Of The '988 Patent**

As with the '622 Patent, the record supports inferences that are quite the opposite from those Telcordia relies upon for summary judgment on the '988 Patent.

For the '988 Patent, Telcordia contends that the claim requirement "generic instruction," which the parties agreed means "an instruction applicable to the groups of elements," is not met because the accused system sends instructions to network elements one at a time. Telcordia's non-infringement ignores two fundamental facts confirming that the accused systems do in fact send "generic instructions" as required by the claims. First, Telcordia ignores the fact that its own Rule 30(b)(6) witnesses on the accused products admitted numerous times in deposition that

REDACTED

Second, Telcordia ignores the fact that the invention of the '988 Patent, as it was conceived, reduced to practice, described and claimed, requires that a generic command be translated into device-specific commands that are sent one at a time. According to an inventor of the '988 patent, this is precisely what he and his co-inventor envisioned and implemented and, as a technical matter, is the only way a system like this could work. *See, e.g.,* Ex. F [6/27/08 Spector Dep.] at 109:17-112:25; 213:1-18. Both of these facts are supported in the factual record that Telcordia ignores and both will surely be the subject of extensive expert proof.

Once again, the only way Telcordia's request for summary judgment can be granted is if all factual inferences are drawn in Telcordia's favor and expert discovery on fundamental infringement issues is completely forgone. Neither the law nor the facts would support such a request.

\*　　\*　　\*

For the reasons set forth above, Telcordia's request to file a motion for summary judgment of non-infringement should be denied.

The Honorable Gregory M. Sleet
Page 6
July 24, 2008

Respectfully submitted,

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

cc:    Peter T. Dalleo, Clerk (By Hand)
       Edward R. Reines, Esquire (By Email)
       Steven J. Balick, Esquire (By Hand and Email)
       Vincent P. Kovalick, Esquire (By Email)

**EXHIBIT 5**
**(Expert Report - T. Musika)**
**FILED UNDER SEAL**

# REDACTED